UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 --------------------------------------------------------------------X
RAMON LOPEZ,

                    Plaintiff,

         - against -

TINA M. STANFORD, *et al.*,

                  Defendants.
 --------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-CV-3493 (RRM) (LB)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

*Pro se* plaintiff Ramon Lopez ("Lopez") brings this civil rights action against the chairwoman and various employees of the New York State Board of Parole, the Director of Operations and two other employees of RevCore Recovery Center, a Nassau County Family Court judge, and his ex-wife, Mayra L. Lopez, principally challenging the restrictions imposed on him as conditions of his release to parole supervision alleging that the conditions violate the federal and New York State Constitutions.  (Second Amended Complaint ("SAC") (Doc. No. 65).)  Presently before the Court are his Mayra Lopez's motion for judgment on the pleadings, and the remaining defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons stated below, Myra Lopez's motion is granted, and the remaining defendants' motions are granted in part and denied in part.

## BACKGROUND

On August 19, 2016, Lopez was released from custody after serving a five-year sentence for sex offenses.  (SAC ¶ 14.)  Shortly after his release from custody, in September 2016, Lopez was served with an order of protection issued by Nassau County Family Court Judge Felice J. Muraca restraining him from contact with his ex-wife, Mayra I. Lopez, an Assistant District Attorney in Nassau County.  (SAC ¶ 19.)

On June 13, 2018, Lopez filed a *pro se* civil rights complaint against Tina M. Stanford, the Chairwoman of the New York State Board of Parole ("BOP"); Mayra Lopez; Judge Muraca; and three other parole officials – primarily challenging certain conditions of his parole as violative of the federal and New York State Constitutions.  (Compl. (Doc. No. 1).)  The complaint sought declaratory and injunctive relief, as well as damages.

On July 3, 2018, Lopez filed an amended complaint in which he added Audra Grant and Rayna Ramirez as defendants.  Grant and Ramirez are named in this action by virtue of their employment at RevCore Recovery Center LLC ("RevCore"), where Lopez was ordered to participate in alcohol and substance abuse treatment as a mandatory condition of his parole.

Lopez also filed his first TRO motion in July.  He alleged that specific parole conditions including requiring that he attend domestic violence and alcohol and substance abuse treatment programs were unrelated to his criminal conduct.  That motion was denied because he did not provide any factual allegations about his crime of conviction, leaving the Court no basis to conclude that the conditions were not reasonably and necessarily related to the state's interests in light of the conduct for which he was convicted.  (Mem. & Order (Doc. No. 12).)

On August 17, 2018, Lopez filed a motion for reconsideration, acknowledging that he "inadvertently did not include" the "pertinent factual evidence pertaining to his crime of conviction" in his original motion for an injunction and TRO.  (Pl.'s Mem. of Law (Doc. No. 15-2) at 2.)[1]  On October 1, 2018, Lopez withdrew that motion and replaced it with a second TRO motion, seeking a TRO, preliminary injunction, and appointment of *pro bono* counsel.  (Second TRO Mot. at 2.)  Unlike the first motion for a TRO, the second TRO motion provided the Court with documents describing his offense.  (Exs. 13–14 to Second TRO Mot. (Doc. No. 30-2) at 28–

---

[1] The Court uses the page numbers assigned by ECF.

39.)  On four distinct occasions, Lopez sexually abused women, ranging in age from 25 to 31. (Order of 3/22/2019 (Doc. No. 44) (citing Pre-Sentence Report, Ex. 14 to Second TRO Mot. (Doc. No. 30-2) at 38).)  After representing that he was a taxi driver, Lopez would offer to drive the victim home.  (Pre-Sentence Report at 38.)  Once the victim was in the back of his car, he would pull over his car, climb in the back seat, and get on top of the victim.  While holding the victim down, he would rub his penis against the victim and with his final victim, he removed his penis from his pants and rubbed it on the victim's vagina and forced her to touch his penis.  (*Id.*) Lopez pleaded guilty to sexual abuse, unlawful imprisonment, forcible touching, and harassment in violation of several provisions of New York Penal Law.  (*Id.*)  Lopez was sentenced to five years in custody, followed by ten years of supervised release.  (*Id.*)

The Court denied Lopez's second TRO motion, except with respect to limitations on communication for which the Court ordered additional factual development.  (Mem. & Order (Doc. No. 44).)  On May 31, 2019, the BOP ordered that the special condition concerning Lopez's access to the internet and use of a smartphone with a camera be removed effective immediately, mooting additional factual development.  (Letter from Parole Board (Doc. No. 52).)

On July 12, 2019, Lopez filed his SAC, the operative pleading in this action.  All of his claims stem directly from his conviction, possibly with the exception of his ninth cause of action challenging the lawfulness of the order or protection that defendant Mayra Lopez obtained against him.  Lopez names additional RevCore employees as defendants, Tabitha Forte, Marta Hendozka, and Justyna Rzewinki, each of whom are alleged to have been RevCore employees at the time that Lopez received treatment from RevCore.  (SAC ¶¶ 10–13.)  Apart from Lopez's state law claims against RevCore employees, all of Lopez's claims for constitutional violations

are brought pursuant to 42 U.S.C. § 1983.  (SAC ¶ 1.)  The SAC does not name Rayna Ramirez as a defendant.

Lopez's first three causes of action all relate to parole conditions restricting his internet access.  Lopez's first cause of action alleges that Stanford, Senior Parole Officer Tina Shaw, and Parole Officer Lisa Duquesnay violated his First Amendment right by setting a parole condition restricting his internet and social media.  (SAC ¶¶ 60–64.)  Lopez's second cause of action alleges that Shaw and Duquesnay violated his First Amendment right to free exercise of religion by restricting his internet and social media access, thereby preventing him from using a smartphone to access religious texts.  (SAC ¶¶ 65–69.)  His third cause of action alleges that the BOP and the New York State Department of Corrections and Community Supervision ("DOCCS") violated his First Amendment right by preventing him from using a computer as a condition of his parole.  (SAC ¶¶ 70–73.)

Lopez's fourth cause of action alleges that Stanford, Shaw, and Duquesnay violated his First, Eighth, and Fourteenth Amendment rights by instituting various conditions of parole including internet-access restrictions pursuant to the Electronic Security and Targeting of Online Predators Act ("e-STOP") and requirements that he enroll in RevCore's substance and alcohol abuse program and register with the Domestic Violation alert system.  (SAC ¶¶ 74–79.)  Lopez contends that none of these conditions are related to his crime and are therefore arbitrary and capricious.

Pursuant to the conditions of his release, Lopez's residence must be approved by parole. Lopez, apparently having remarried, sought to live with his new wife and her daughter, but that request was denied and Lopez moved into a shelter.  (SAC ¶ 81.)  In his fifth cause of action, Lopez alleges that DOCCS, Stanford, Shaw, and Duquesnay violated his Fifth, Eighth, and

Fourteenth Amendment rights by not permitting him to live with his wife and stepdaughter. (SAC ¶¶ 80–83.) Lopez claims that shelter housing impedes his ability to successfully complete parole and that he was only denied his choice of home because it was easier for parole to supervise him at a shelter, where his parole officer supervised other parolees. (SAC ¶ 82.)

Lopez's sixth cause of action alleges that DOCCS violated his Fifth, Eighth, and Fourteenth Amendment rights by forcing him to attend domestic violence and substance/alcohol abuse treatment program. (SAC ¶¶ 84–86.) Lopez contends that his crime did not relate to domestic violence and he does not suffer from substance or alcohol abuse and therefore imposition of these programs was unconstitutional. (SAC ¶¶ 84–86.) Lopez's seventh cause of action alleges that DOCCS violated his constitutional rights by mandating that Lopez attend sex offender treatment until his parole ends on March 19, 2027. (SAC ¶¶ 87–90.) His eighth cause of action alleges that eight different conditions of his parole violate his constitutional rights and he holds BOP and DOCCS liable for these violations. (SAC ¶¶ 91–99.)

Lopez's ninth cause of action alleges that Mayra Lopez and Judge Muraca acted together to violate his constitutional rights by issuing an order of protection against Lopez. (SAC ¶¶ 100–03.) He claims that Mayra Lopez and Judge Muraca were colleagues by virtue of Mayra Lopez's employment as a Nassau County Assistant District Attorney and therefore the order of protection issued by Judge Muraca was unethical and violated his due process rights. (SAC ¶¶ 13, 20, 100–03.)

Lopez's final cause of action alleges that RevCore and Grant violated his due process right and state laws by terminating him from his treatment program prior to completion based upon a false drug test. (SAC ¶¶ 104–10.) RevCore, though mentioned in the tenth cause of action, has not been named as a defendant in this action. Lopez also alleges that his termination

was retaliatory and therefore violated his First Amendment rights.  He claims he was only terminated after filing a grievance about his treatment at RevCore with the New York State Office of Addiction Services and Supports ("OASAS"), the state agency that oversees the state's addiction services.  (SAC ¶¶ 52–54.)  Lopez seeks declaratory and injunctive relief as well as damages.

On August 16, 2019, the BOP, DOCCS, Stanford, Shaw, Duquesnay, and Judge Muraca, (collectively the "State Defendants"), filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  (State Defendants' Mot.)  The State Defendants move, among other things, to dismiss the SAC for failing to state a claim because the SAC does not describe the facts underlying Lopez's crime of conviction, which forecloses the Court's ability to evaluate the lawfulness of Lopez's conditions of release.  (State Defendants' Mot. at 14.)  The State Defendants also argue that they are entitled to dismissal because Lopez's parole conditions are constitutional.  (State Defendants' Mot.)  Finally, the State Defendants argue that Judge Muraca is entitled to absolute judicial immunity and that the Eleventh Amendment bars Lopez's claims against the BOP and DOCCS, as well as his claims for monetary damages against the State Defendants sued in their official capacity.  (State Defendants' Mot.)

Mayra Lopez filed a motion for judgment on the pleadings primarily arguing that Lopez cannot sustain a § 1983 claim against her because the SAC fails to allege any state action by Mayra Lopez when she obtained an order of protection against him.  (Mayra Lopez Mot. (Doc. No. 90).)

On November 4, 2019, Marta Hendozka, Justyna Rzewinski, Tabitha Forte, and Grant (collectively, the "RevCore Defendants") also filed a motion to dismiss pursuant to Rule 12(b)(6).  (RevCore Defendants' Mot. (Doc. No. 109)).  The RevCore Defendants assert that

they are entitled to dismissal because Lopez has not stated a claim for a violation of the New

York Criminal Code, and because a § 1983 claim for First Amendment retaliation and denial of

due process cannot be asserted against the RevCore Defendants because they are not state actors

and their conduct was not under the color of state law.  (*Id.*)  Lopez opposes the motions.  (Lopez

Opp. to Mayra Lopez Mot. (Doc. No. 91); Lopez Opp. to State Defendants' Mot. (Doc. Nos. 99

and 106); Lopez Opp. to RevCore Defendants' Mot. (Doc. No. 121-1).)   In response to the State

Defendants' argument that they are entitled to dismissal because Lopez does not describe the

facts underlying his conviction, Lopez points to a December 2012 Pre-Sentence Investigation

Report, which provides a brief summary of his crime.  (Exhibit 2 to Lopez Opp. to Mayra Lopez

Mot. (Doc. No. 91-2).)

## STANDARDS OF REVIEW

### I.      Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action

where the court lacks subject matter jurisdiction – that is, "when the district court lacks the

statutory or constitutional power to adjudicate" the case.  *Doyle v. Midland Credit Mgmt., Inc.*,

722 F.3d 78, 80 (2d Cir. 2013) (quoting *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188

(2d Cir. 2009) (per curiam)); FED. R. CIV. P. 12(b)(1).  Plaintiffs bear the burden of showing that

subject matter jurisdiction exists.  *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 141 (2d Cir. 2011).

On a motion to dismiss pursuant to Rule 12(b)(1), "a court accepts as true all the factual

allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff."

*Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  Nevertheless, the district court may

refer to evidence outside the pleadings, such as documents or affidavits, without converting the

motion to one for summary judgment.  *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates*

*Co.*, 436 F.3d 82, 88 n.8 (2d Cir. 2006).

## II.      Rule 12(b)(6) and 12(c)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A complaint need not contain "detailed factual

allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  That is, a complaint

must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  The determination of

whether "a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556

U.S. at 678 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).  "In a judgment on the

pleadings under Rule 12(c) we apply the same standard as that applicable to a motion under Rule

12(b)(6)." *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007) (summary order).

Generally, the Court's review is limited to facts alleged in the complaint, documents

attached to the complaint or incorporated by reference in the complaint, documents integral to

the complaint, and matters of which the Court may take judicial notice.  *See Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

> When a plaintiff proceeds pro se, however, the Court "may consider materials
> outside the complaint to the extent that they are consistent with the allegations in
> the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (citation and quotation
> marks omitted), including "documents that a pro se litigant attaches to his

opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[ ] either possessed or knew about and upon which [the plaintiff] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

*Cianfano v. Vill. of Tuckahoe*, No. 18-CV-7882 (KMK), 2019 WL 3456887, at *3 (S.D.N.Y. July 31, 2019).  The Court finds that the Pre-Sentence Report, attached to Lopez's Second TRO Motion is consistent with the allegations in the complaint and therefore considers it.  The Pre-Sentence Report, which Lopez has previously filed in this case, provides additional details regarding Lopez's crime of conviction.  The Court also considers the conditions of Lopez's release, Exhibit A to his Amended Complaint, on this motion as it is within the "four corners of the complaint," despite Lopez's failure to attach it to his SAC.  (DOCCS Special Conditions of Release ("Conditions"), Ex. A to Am. Compl. (Doc. No. 9-1).)  The "four corners of the complaint" include "any documents attached to that pleading or incorporated into it by reference, any documents that are 'integral' to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice." *BLT Rest. Grp. LLC v. Tourondel*, 855 F.Supp.2d 4, 15 (S.D.N.Y. 2012); *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## III.    Standards Applied to *Pro Se* Litigants

The Court holds *pro se* complaints to a less exacting standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008).  The Court reads *pro se* pleadings to "raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal citations omitted).  If a liberal reading of the complaint "gives any indication that a valid claim might be

stated," the Court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Ashmore v. Prus*, 510 F. App'x. 47, 48 (2d Cir. 2013) (summary order) ("District courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend.").

## DISCUSSION

### I.      Claim Against Mayra Lopez

A § 1983 claim "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Therefore, private parties are not proper defendants in a § 1983 action unless the private parties were acting under color of state law. *Jae Soog Lee v. Law Off. of Kim & Bae, PC*, 530 F. App'x 9, 9 (2d Cir. 2013) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). "[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Id.* (internal quotation marks omitted). A "conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Rather, to demonstrate a § 1983 conspiracy between a private party and a state authority sufficient to survive a motion to dismiss, plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324–25. "[C]omplaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977). Moreover,

"assertions [that] lack any factual foundation . . . are merely conclusory allegations 'masquerading as factual conclusions' [and] are insufficient to defeat a motion to dismiss." *Jackson v. Cnty. of Rockland*, 450 Fed. App'x 15, 19 (2d Cir. 2011) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006)).

In his SAC, Lopez asserts a § 1983 claim against Mayra Lopez but fails to plausibly allege that she was acting under the color of state law.  Lopez alleges in conclusory fashion that Mayra Lopez used her status as an Assistant District Attorney to conspire with Judge Muraca to obtain an order of protection against Lopez.  (SAC ¶¶ 100–03.)  However, absent from the SAC are any allegations that plausibly allege that Mayra Lopez was acting under the color of state law when she sought an order of protection against her ex-husband.  Mayra Lopez's employment as an Assistant District Attorney does not mean that her every action can be characterized as state action.  *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 230 (2d Cir. 2004).  Lopez also wholly fails to allege specific facts that would plausibly show the existence of any agreement or concerted action between Mayra Lopez and Judge Muraca.  Accordingly, Lopez's claim against Mayra Lopez is dismissed with prejudice.

## II.      Claim Against Judge Muraca

It is well settled that judges have absolute immunity for their judicial acts performed in their judicial capacities.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Dupree v. Bivona*, No. 07-CV-4599, 2009 WL 82717, at *1–2 (2d Cir. Jan. 14, 2009) (summary order); *Colson v. New York Police Dept.*, No. 13-CV-5394 (JG) (CLP), 2015 WL 64688, at *6 (E.D.N.Y. Jan. 5, 2015).  This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action [she] took was in error . . . or was in excess of [her] authority."  *Mireles*, 502 U.S. at 11

11

(quotation omitted); *see also Horton v. City of New York*, No. 14-CV-4279 (KAM), 2014 WL 3644711, at *1 (E.D.N.Y. July 22, 2014); *Edo v. Queens Cty. Criminal Court*, No. 13-CV-7089 (JBW), 2013 WL 6732811, at *1 (E.D.N.Y. Dec. 19, 2013); *Gamez v. U.S. Dist. Court E. & S. Dist. of-Tyranny, N.Y.*, No. 11-CV-4068 (KAM), 2011 WL 3949807, at *1 (E.D.N.Y. Sept. 6, 2011).

Judge Muraca is entitled to absolute judicial immunity for his issuance of an order of protection against Lopez and therefore Lopez's claim against him must be dismissed.  Lopez fails to allege any facts to suggest that Judge Muraca was without jurisdiction or acted outside of his judicial capacity in issuing the order of protection against Lopez.  Accordingly, Lopez's claim against Judge Muraca is foreclosed by judicial immunity.  In light of the dismissal of the claim against Mayra Lopez and Judge Muraca, Lopez's ninth cause of action, alleged against only these two defendants, is dismissed.

## III.   Claims Against the State and Its Officers In Their Official Capacity

States enjoy sovereign immunity from suit in federal court pursuant to the Eleventh Amendment of the United States Constitution.  *See Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015).  "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Woods v. Roundout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted) (citation omitted).  State agencies or employees cannot be sued in federal court in their official capacities, absent the state's consent or an express statutory waiver of immunity by Congress.  *See Gollomp v. Spitzer*, 568 F.3d 355, 365–66 (2d Cir. 2009); *Holmes v. Caliber Home Loans, Inc.*, No. 16-CV-3344 (KMK), 2017 WL 3267766, at *5 (S.D.N.Y. July 31, 2017).

The State Defendants contend that all claims against BOP, DOCCS, and individual State Defendants sued in their official capacity should be dismissed under Rule 12(b)(1) as barred by the Eleventh Amendment.  (State Defendants' Mot. at 28.)  New York State has not waived its Eleventh Amendment immunity and consented to suit in federal court.  *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–40 (2d Cir. 1977).  BOP and DOCCS are arms of the state and are therefore entitled to Eleventh Amendment immunity.  As such, the Eleventh Amendment precludes Lopez's request for monetary damages against the BOP, DOCCS, and the State Defendants in their official capacities.  *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (dismissing claims against DOCCS and individual defendants sued in their official capacities on Eleventh Amendment grounds); *Ford v. Miller*, No. 18-CV-1815 (PAE) (BCM), 2019 WL 6831640, at *13 (S.D.N.Y. Aug. 23, 2019), *report and recommendation adopted*, No. 18-CV-1815 (PAE), 2019 WL 4673445 (S.D.N.Y. Sept. 25, 2019) (same).  The Court notes that the *Ex parte Young* exception to Eleventh Amendment immunity would apply to Lopez's claims against the individual State Defendants because Lopez seeks prospective injunctive relief, however this is inconsequential because, as discussed below, all claims against the State Defendants are dismissed on the merits.  *See Ex parte Young*, 209 U.S. 123 (1908).

## IV.    Claims Against Stanford and Shaw

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation and internal quotation marks omitted). "Personal involvement can be shown by evidence that the defendant 'participated directly in the alleged constitutional violation'; or that the defendant acted in a supervisory capacity by creating a policy or custom under which violations occurred, by negligently supervising subordinates, or

by failing to act or remedy wrongs after being aware of them." *Anderson v. City of New York*, 817 F. Supp. 2d 77, 93 (E.D.N.Y. 2011) (quoting *Colon*, 58 F.3d at 873). "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Put differently, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

State Defendants argue that Stanford and Shaw are entitled to dismissal because Lopez has failed to plausibly allege their personal involvement in the violations of his constitutional rights. (State Defendants' Mot. at 25–27.)

### a. Stanford

Lopez alleges that Stanford, who is the Chairwomen of the New York State Division of Parole and oversees the BOP, is responsible for the broad duties of the BOP, including "mandating the conditions of release of any person who may be presumptively released or conditionally released . . . ." (SAC ¶ 5.) Lopez also alleges that Stanford violated his First Amendment right by restricting his internet and social media access, and that "[n]ot amending [this] Condition for all parolees . . . will continue to jeopardize 'Modern Free Speech' in the technological era we live in today." (SAC ¶ 61.) These statements are nothing more than a bare assertion that Stanford is a supervisor, which is insufficient to state a § 1983 claim. Lopez has failed to allege any factual basis upon which a fact finder could reasonably conclude personal involvement by Stanford. Thus, the claims against her are dismissed.

### b. Shaw

Lopez alleges that Shaw, a senior parole officer, directly supervises Duquesnay. (SAC ¶ 8.) Lopez alleges that Shaw was present on September 13, 2016, when he was asked to remove

14

the camera from his smartphone as a condition of his parole.  (SAC ¶ 21.)  Lopez asked Shaw

and Duquesnay multiple questions about why this condition was imposed and they refused to

answer.  (*Id.*)  Lopez further alleges that after Duquesnay told him he could not work as

paralegal, he asked to speak with Shaw, but Shaw refused to answer his questions "and instead

directed advised [sic] not to work as a Paralegal or be subjected to a violation of parole . . ."

(SAC ¶¶ 23–24.)  Lopez further alleges that "Duquesnay spoke to Shaw and unlawfully refused

to honor" his request to live with his wife and Duquesnay and Shaw denied his request to have

internet access in June 2018.  (SAC ¶¶ 34, 42.)

In light of Lopez's *pro se* status, the Court finds that Lopez has sufficiently alleged

Shaw's personal involvement in the alleged constitutional violations.  Unlike Stanford, Shaw's

role in supervising Lopez's parole extends beyond that of an uninvolved supervisor.  Shaw was

present for at least one meeting with Lopez where Shaw and Duquesnay enforced a condition of

his parole and Shaw cautioned Lopez against accepting employment that would violate his

parole.  Viewed liberally, Lopez has sufficiently alleged that Shaw actually enforced certain

conditions of his parole, which is sufficient to constitute her personal involvement.  Accordingly,

the State Defendants' motion to dismiss the claims against Shaw on account of her lack of

personal involvement is denied.

## V.   Challenges to Parole Conditions

Challenges to parole conditions are cognizable under Section 1983.  *See, e.g.*, *Singleton

v. Doe*, No. 14-CV-0303 (MKB), 2014 WL 3110033, at *3 (E.D.N.Y. July 7, 2014); *Trisvan v.

Annucci*, 284 F. Supp. 3d 288, 296 (E.D.N.Y. 2018).  "Section 1983 provides a civil cause of

action for damages and injunctive relief against any person who acts under color of state law to

deprive another of a constitutional right."  *Bailey v. N.Y.C. Police Dep't*, No. 93-CV-1281 (CPS),

1993 WL 416544, at *1 (E.D.N.Y. Sept. 28, 1993).

While parolees are not without constitutional rights, they are subject to "restrictions not applicable to other citizens" and enjoy only "the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480, 482 (1972). "Although a parolee should enjoy greater freedom in many respects than a prisoner, we see no reason why the Government may not impose restrictions on the rights of the parolee that are reasonably and necessarily related to the interests that the Government retains after his conditional release." *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972).

Government interests are considered "in light of the crime and circumstances related to [the parolee's] conviction." *Trisvan*, 284 F. Supp. 3d at 296. Generally, "the imposition of conditions—whether imposed prior to or subsequent to release, by the parole board or a field parole officer—must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses." *Singleton*, 2014 WL 3110033, at *3 (quoting *Robinson v. New York*, No. 09-CV-0455, 2010 WL 11507493, at *3 (N.D.N.Y. Mar. 26, 2010)); *see also Robinson*, 2010 WL 11507493, at *6 ("[W]here the condition is not related to the parolee's criminal history or to the State's interests, it may be prone to tailoring or invalidation.").

### a. First Cause of Action

Pursuant to his conditions of release, Lopez had to obtain permission before using services that provide access to the internet, and he was prohibited from using online services involving "the exchange of electronic messages." (Conditions at 5, 10.) Lopez also was restricted from using the internet to access social networking websites, among other restrictions. (*Id*. at 9.) These restrictions were removed in May 2019. (Letter from Parole Board (Doc. No.

16

52).)  Lopez's first cause of action alleges that Shaw and Duquesnay violated his First Amendment right by unconstitutionally restricting his internet and social media in light of the Supreme Court decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017).  (SAC ¶¶ 60–64.)[2]  The State Defendants argue that they are entitled to dismissal of this claim because *Packingham* is inapplicable to parole conditions.  (State Defendants' Mot. at 16.)  The Court disagrees.

"Under *Packingham*, blanket limitations on an individual's ability to access social media will receive intermediate scrutiny, even when imposed as conditions of parole.  There is no indication in *Packingham* that parolees are exempted from the Court's decision."  *Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *16 (S.D.N.Y. Jan. 11, 2019), *appeal withdrawn sub nom. Yunus v. Lewis-Robinson*, No. 19-382, 2019 WL 3814554 (2d Cir. May 15, 2019).  The Court has already addressed the applicability of *Packingham* to Lopez's First Amendment claim regarding the restrictions of his social media use in its Memorandum and Order on Lopez's Second TRO Motion (Doc. No. 44) at 10–12; familiarity with that prior Order is assumed.  Accordingly, the Court will not repeat its prior analysis except to note that in its prior Order, the Court found that the State Defendants "have not described the relationship, if any, between the limitations imposed and Lopez's actual crime of conviction or other past conduct."  (*Id.* at 12.)  The same is true here and the State Defendants do not argue that these conditions can withstand intermediate scrutiny.  As such, the State Defendants are not entitled to dismissal on this ground.

### i.  Qualified Immunity

Even if Lopez has stated a § 1983 claim for a violation of his First Amendment rights, the

---

[2] As the Court has already dismissed Lopez's claims against Stanford, the Court omits her as a defendant in its discussion of Lopez's claims.

State Defendants argue that the doctrine of qualified immunity warrants dismissal of Lopez's claim for money damages in his first cause of action. (State Defendants' Mot. at 18–19.) Qualified immunity is only a bar to a request for monetary relief, and not injunctive relief.[3]  *See Horne v. Coughlin*, 191 F.3d 244, 250 (2d Cir. 1999). While the defense of qualified immunity may be asserted on a Rule 12(b)(6) motion, "the complaint itself [must] establish[] the circumstances required as a predicate to a finding of qualified immunity." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004). "Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). A right is "clearly established" when "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Southerland v. City of New York*, 680 F.3d 127, 141 (2d Cir. 2012) (alterations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

The State Defendants argue that Supreme Court's decision in *Packingham* did not clearly establish that the internet access parole conditions imposed on Lopez could violate his First Amendment rights. (State Defendants' Mot. at 19.) The Court agrees. Judge Nathan's opinion in *Yunus* is instructive on whether a parolee's First Amendment rights under *Packingham* are

---

[3] The State Defendants correctly note that Lopez's claim for injunctive relief on his first cause of action was mooted by the removal of the conditions of his parole restricting his access to the internet and to a cell phone capable of taking photos. (State Defendants' Mot. at 15.)

clearly established.

> The Court finds that Plaintiff's rights were not clearly established under
> *Packingham* and that Defendants are therefore entitled to qualified immunity. For
> a right to be clearly established, "existing precedent must have placed the
> statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct.
> 548, 551 (2017) (internal quotes omitted). Though for the reasons above the Court
> ultimately agrees with Plaintiff's reading of *Packingham*, it has not been
> established in this jurisdiction that it applies to conditions of supervised release
> and a number of other federal courts have indicated that it might not. *See,
> e.g.*, *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017). Therefore, the
> constitutional question of *Packingham*'s application in this context was not
> beyond debate. !

*Yunus*, 2019 WL 168544, at *17. As a result, Judge Nathan granted defendants' qualified

immunity defense raised in a motion to dismiss a parolee's First Amendment claim challenging a

parole condition prohibiting access to social networking websites. Because Lopez's rights under

*Packingham* were not clearly established, and prior to *Packingham* it was not clearly established

that a social media ban would violate a parolee's constitutional right, Shaw and Duquesnay are

entitled to qualified immunity on this claim.

> **b. Second Cause of Action**

Lopez's second cause of action challenges the parole condition denying him access to a

smartphone as infringing on his First Amendment right to free exercise of religion. (SAC ¶¶ 65–

69.) The State Defendants argue that they are entitled to dismissal on this claim because Lopez

has failed to allege a prima facie First Amendment Free Exercise claim and Lopez has failed to

allege that Shaw and Duquesnay's conduct was not reasonably related to some legitimate

penological interest. (State Defendants' Mot. at 17; State Defendants' Reply (Doc. No. 100) at

9.)

As discussed above, a parole condition must be upheld as long as it is "reasonably related

to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism

and prevent further offenses." *Singleton*, 2014 WL 3110033, at *3.  Lopez alleges that by

denying him access to a smartphone he is unable to access the Church of Jesus Christ of Latter

Day Saints' app, which "allows constituents to access the gospel library (24/7), which includes

the Bible, Teachings, General Conferences, Videos, and Music etc."  (SAC ¶ 67.)  This in turn

hinders his ability to practice his religion.  (*Id.*)  Lopez also states that possession of smartphone

has "no nexus to Mr. Lopez['s] crime of conviction."  (SAC ¶ 69.)  Apart from this wholly

conclusory statement, the SAC contains no factual allegations regarding the relatedness between

the denial of access to smartphone and his crime of conviction.  Setting aside this defect in

Lopez's claim, it is unclear how denying access to a smartphone, when he is permitted to access

a computer with internet as long as he obtains approval from his probation officer, (Conditions at

5), denies Lopez access to online religious materials.  Further, there is no allegation in the SAC

that Lopez requested approval from Shaw or Duquesnay to access these materials and was

denied.  *See Trisvan*, 284 F. Supp. 3d at 301 ("the Court finds it likely relevant whether there

were any requested and available accommodations").  Accordingly, this claim is dismissed.

### c.  Third Cause of Action

Lopez's third cause of action alleges that the BOP and DOCCS violated his First

Amendment right by imposing a condition of release that prevents him from using a computer

without authorization.  (SAC ¶¶ 70–73.)  Because the Court has already granted dismissal of

these defendants, this cause of action is dismissed.

### d.  Fourth and Sixth Causes of Action[4]

#### i.  e-STOP

Lopez challenges the imposition of e-STOP, which requires certain sex offenders to

---

[4] Because of overlap between Lopez's fourth and sixth causes of action, the Court will address them together.

register their internet accounts and screen names with probation and restricts offenders from

using the internet to access pornographic material and other materials without permission from a

parole officer.  Lopez argues that this condition violates his constitutional rights because e-STOP

is applied to sex offenders with a risk level of three, offenders who used the internet to commit

the offense, or offenders who had a child victim, none of which apply to Lopez.  (SAC ¶ 76.)

Even though the e-STOP condition has been removed, Lopez argues that he is entitled relief

because this condition does not "squarely fit with Mr. Lopez['s] crime of conviction" and was

"erroneously applied" to him.  (SAC ¶¶ 75–76.)  State Defendants do not address Lopez's

allegation that the e-STOP condition should not have been applied to him.  Instead, they argue

that the restrictions placed on Lopez did not violate his rights and even if they did, they are

entitled to qualified immunity.  (State Defendants' Mot. at 20.)

To the extent Lopez's SAC can be liberally construed to be asserting a First Amendment

claim with respect to the imposition of the e-STOP condition, the State Defendants are entitled to

qualified immunity for the same reasons as discussed in Lopez's first cause of action.

Lopez's contention that e-STOP is inapplicable to him also fails.  Under the New York

State e-STOP law, the BOP is required to prohibit certain parolees "from using the internet to

access pornographic material, access a commercial social networking website, communicate with

other individuals or groups for the purpose of promoting sexual relations with persons under the

age of eighteen, and communicate with a person under the age of eighteen when such offender is

over the age of eighteen." N.Y. Exec. § 259–c(15).  Lopez correctly identifies the categories of

parolees who are required to comply with this condition: sex offenders whose victim was under

the age of eighteen, level three sex offenders, or where the internet was used to facilitate the

commission of the crime. *See id.*  However, the mandatory language of § 259–c(15) does not

limit the BOP's ability to apply these conditions to other parolees like Lopez.  Accordingly,

Lopez's challenge to the e-STOP conditions of his parole fails.

### ii. Substance Abuse Treatment Program, Domestic Violence Treatment Program, and Registration with Domestic Violence Alert

Lopez alleges that he does not have substance or alcohol abuse history or domestic

violence abuse history and therefore he should not have been forced as a condition of his release

to enroll in a substance and alcohol treatment program, domestic violence treatment program,

and should not have had a domestic violence alert imposed on him.  (SAC ¶¶ 74–79, 84–86.)

Regarding the domestic violence alert, Lopez concedes that the purpose of the alert "is simply to

alert staff that the individualized case plan for the parolee must include assessing and monitoring

a parolee's behavior to ensure that no further victimization occurs."  (SAC ¶ 31.)

This Court has previously discussed Lopez's claim that he should not have been

subjected to a substance abuse program or registered with a domestic violence alert because

these conditions are not related to his offense:

> Lopez's case summary indicates "he had been drinking and flirting with the
> victims" prior to his offenses, which were committed by "forcible compulsion."
> The case summary also identifies Lopez as a "Sexually Violent Offender," and
> while it does indeed note that he "did not score in the problem or treatment need
> areas regarding alcohol or substance abuse when administered the MAST or SSI,"
> it also indicates that he was nonetheless "referred to the Alcohol and Substance
> Abuse Treatment (ASAT) program while incarcerated and is on the wait list to
> attend."  In addition, he has been considered a "Violent Felony Offender" and was
> referred to an aggression therapy program.
>
> Because his criminal conduct did involve alcohol use and forcible compulsion,
> Lopez has not clearly shown that the imposition of mandatory attendance to
> alcohol, substance abuse, and domestic violence treatment is not reasonably
> related to his past conduct, or is arbitrary and capricious.  *See Birzon v. King*, 469
> F.2d 1241, 1243 (2d Cir. 1972); *Trisvan*, 284 F. Supp. 3d at 296 (E.D.N.Y. 2018).

(Order of 3/22/19 at 5–6 (internal citations omitted).)  The Court has also previously analyzed

Lopez's claim that he should not have been subject to a domestic violence alert and explained

that the alert "does not impose any condition to which Lopez is subject." (*Id.* at 7.)  While this Court's prior discussion was in the context of denying Lopez's request for injunctive relief, the relation of these conditions to Lopez's past conduct is unchanged.  Accordingly, the State Defendants' motion to dismiss these claims is granted.

> **e.   Fifth Cause of Action**

In his fifth cause of action, Lopez alleges that Shaw and Duquesnay violated his Fifth, Eighth, and Fourteenth Amendment rights by refusing to approve Lopez's request to live with his wife and now 15-year old stepdaughter and instead forcing him to live at a shelter until he completes a domestic violence treatment program.  (SAC ¶¶ 80–83.)  Lopez alleges that it was easier for his parole officer to supervise parolees because multiple parolees were housed at the same shelter.  (SAC ¶ 82.)  The State Defendants argue that Lopez was only denied approval to live with his wife and stepdaughter until he completed his domestic violence treatment program, which is reasonably related to his crime.  (State Defendants' Mot. at 22.)  The State Defendants also argue that Lopez's history of sexual assault coupled with the issuance of an order of protection against him, entitled Shaw and Duquesnay to qualified immunity on this claim.  (*Id.*)  Pursuant to the terms of Lopez's parole, his residence must be approved by DOCCS. (Conditions at 12).

Here, at the very least, the State Defendants are entitled to qualified immunity on Lopez's fifth cause of action.  As discussed above, "a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell*, 316 F.3d at 385.  For a right to be "clearly established . . . existing precedent must have placed the statutory or constitutional

question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft*, 563 U.S. at 741).  Lopez

alleges that his request to live with his wife and stepdaughter was denied pretextually because of

a de facto parole condition requiring him to remain in a shelter for the convenience of his parole

officer.  Accepting these facts as true, even if Lopez has plausibly alleged a cognizable damages

claim, the State Defendants are entitled to qualified immunity because in August 2016, it was not

at all clear that this sort of condition violated a parolee's constitutional rights.  *See Yunus v.*

*Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *20 (S.D.N.Y. Jan. 11, 2019), *appeal*

*withdrawn sub nom. Yunus v. Lewis-Robinson*, No. 19-382, 2019 WL 3814554 (2d Cir. May 15,

2019) (citing *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017); *Singleton v. Doe*, 210 F. Supp. 3d

359, 374 *(E.D.N.Y. 2016) (defendants were entitled to qualified immunity because "neither

Judge Moses nor Plaintiff identified any sufficiently similar cases to clearly establish that

Defendant [parole officer's] conduct with respect to alternate residences was unconstitutionally

arbitrary.")).

### f.   Seventh Cause of Action

Lopez's seventh cause of action challenges the condition of his release that he remain in

sex offender treatment for ten years, through the end of his parole.  Lopez contests how his risk

of recidivism category, which Lopez says is critical to how restrictive his parole is, was

calculated, despite admitting the sex offense he committed "automatically put him at default of

category 1 (high risk)."  (SAC ¶ 88.)  Lopez also admits that he failed to complete his sex

offender treatment program at RevCore but alleges that he was discharged from the program as

retaliation for filing a complaint.  (*Id.*)  Lopez alleges that the imposition of ten years of sex

offender treatment is arbitrary.  The State Defendants argue that the imposition of ten years of

sex offender treatment is reasonably related to his crime of conviction.  (State Defendants' Mot.

at 23.)

Accepting Lopez's allegations as true and drawing all reasonable inferences for Lopez, Lopez has failed to state a plausible claim that impositions of ten years of sex offender treatment violated his constitutional rights.  Lopez pleaded guilty to sexual abuse, unlawful imprisonment, forcible touching, and harassment.  Four separate times, Lopez represented to a woman that he was a taxi driver and offered to drive her home.  Each time, once the woman was in his car, he pulled the car over, jumped in the back seat, and got on top of the woman while holding her arms down.  He then rubbed his penis against the woman and in the last offense, he removed his penis from his pants and forced the woman to touch his penis.  The condition of his parole requiring Lopez, a convicted sex offender, to remain in sex offender treatment for ten is years is plainly reasonably related to his crime and is neither arbitrary nor capricious.  *See Maldonado v. Mattingly*, No. 11-CV-1091 (SR), 2019 WL 5784940, at *9 (W.D.N.Y. Nov. 6, 2019) ("Mandatory sex offender programming for an individual convicted of a sex offense does not rise to the level of a substantive due process violation.") (collecting cases).  Lopez's seventh cause of action is dismissed.[5]

g.  **Eighth Cause of Action**

Lopez's eighth cause of action challenges various conditions of his parole as violative of his constitutional rights and he holds the BOP and the DOCCS liable for these violations.  As discussed above, the BOP and DOCCS are immune from suit.

---

[5] Lopez submitted a motion for emergency relief seeking to be relieved of the condition of parole prohibiting him from possessing a driver's license.  (Motion for Emergency Relief (Doc. No. 117).)  The State Defendants oppose the request.  (State Defendants Letter (Doc. No. 119).)  While Lopez's request is not properly before this Court as it is not contained in his SAC, the request to be relieved of the condition of his parole prohibiting him from possessing a driver's license is denied because this condition is reasonably related to Lopez's past conduct—posing as taxi driver, offering women a ride home, and then sexually abusing the women in his car.

### h.   Ninth Cause of Action

Lopez's ninth cause of action is alleged only against defendants Judge Muraca and Mayra

Lopez.  As discussed above, in light of dismissal of Lopez's claim against Mayra Lopez and

Judge Muraca, Lopez's ninth cause of action is dismissed.

### i.   Tenth Cause of Action

Lopez's tenth cause of action relates to the treatment he received at RevCore and his

discharge from the program prior to completion.  His federal cause of action alleges that the

RevCore Defendants "infringed upon Mr. Lopez [sic] liberty interest which prompted Mr. Lopez

[sic] grievance to OASAS against Revcore defendants."  (SAC ¶ 107.)  Lopez alleges that

immediately following his complaint to OASAS, RevCore retaliated against him by creating a

false positive toxicology report and then discharging him from the program prior to completion.

(SAC ¶¶ 108–109.)  The Court construes these as alleging a due process and First Amendment

retaliation § 1983 claim against the RevCore Defendants.

### i.   State Actor

Section 1983 creates a civil cause of action against a party "who, under color of any

statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42

U.S.C. § 1983.  There are two essential elements of a § 1983 claim: "(1) the conduct complained

of must have been committed by a person acting under color of state law; and (2) the conduct

complained of must have deprived a person of rights, privileges, or immunities secured by the

Constitution or laws of the United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)

(citations omitted).

> The actions of nominally private entities are attributable to the state when those actions meet one of three tests: 1. The compulsion test: the entity acts pursuant to the coercive power of the state or is controlled by the state, 2. The public function test: the entity has been delegated a public function by the state, or, 3. The joint action test or close nexus test: the state provides *significant encouragement* to the entity, the entity is a willful participant in *joint activity* with the state, or the entity's functions are *entwined* with state policies.

*Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (citation omitted), *cert. denied*, 131 S.Ct. 914 (2011).  Courts have refused to dismiss private organizations that provide treatment to parolees as a condition of their parole from § 1983 claims on the basis that the private organization is not a state actor.  *Ford*, 2019 WL 6831640, at *12 n.10 (finding a "close nexus" or "joint action" between provider of services to "parole detainees" and state); *Johnson v. White*, No. 06-CV-2540, 2010 WL 3958842, at *4 n.5 (S.D.N.Y. Sept. 9, 2010) (finding private rehabilitation center subject to § 1983 suit because "plaintiff was referred to [rehabilitation center] by the Criminal Justice System. He was required to undergo treatment as an alternative to incarceration."); *Wilson v. Phoenix House*, No. 10-CV-7364 (DLC), 2011 WL 3273179, at *3 (S.D.N.Y. Aug. 1, 2011).

The RevCore Defendants argue that they are entitled to dismissal because RevCore is a private organization and not a state actor.  (RevCore Defendants' Mot. at 21–27.)  The Court disagrees.  The complaint alleges that RevCore provides outpatient drug, domestic violence, anger management, and sex offender treatment.  (SAC ¶ 10.)  As a condition of his parole, Lopez was obligated to receive treatment and was referred to RevCore by DOCCS.  (SAC ¶ 13.)  Lopez alleges that he did not meet the requirements for enrollment in substance and alcohol abuse treatment at RevCore but "DOCCS bullied the program and enforced their clinical decision by directing Revcore to enroll Mr. Lopez or he would go to jail."  (SAC ¶ 105.)  Lopez alleges that he filed two grievances with OASAS concerning RevCore, both of which seem to relate to the positive toxicology report that he received at RevCore, which Lopez claims was false.  (SAC ¶¶

51–55.)  Based on these allegations of close cooperation between DOCCS and RevCore,

RevCore is not entitled to dismissal on the ground that it cannot be held liable under § 1983.

## ii.    Due Process Claim

Lopez alleges that the RevCore Defendants violated his due process rights when they

discharged him from his treatment program.  (SAC ¶¶ 109–10.)  While the RevCore Defendants

generally argue that Lopez has failed to state a claim they do not address the merits of his due

process claim.  Nevertheless, the district court retains the authority to *sua sponte* review the

sufficiency of the pleadings.

"A procedural due process claim is composed of two elements: (1) the existence of a

property or liberty interest that was deprived and (2) deprivation of that interest without due

process."  *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).  "In

evaluating due process claims, '[t]he threshold issue is always whether the plaintiff has a

property or liberty interest protected by the Constitution.'"  *Perry v. McDonald*, 280 F.3d 159,

173 (2d Cir. 2001) (quoting *Narumanchi v. Board of Trs. of the Conn. State Univ.*, 850 F.2d 70,

72 (2d Cir. 1988)).  "[A] number of cases within our Circuit have held that a parolee does not

have a protectable liberty interest in his or her discharge from a drug treatment program . . . even

where that discharge may result in parole revocation proceedings."  *Ford*, 2019 WL 6831640, at

*14 (citing *Moore v. Peters*, 92 F. Supp. 3d 109 (W.D.N.Y. 2015); *Roundtree v. Bartlett*, No. 10-

CV-0828-A-F, 2011 WL 666173 (W.D.N.Y. Feb. 11, 2011); *Marsh v. Bellinger*, No. 06-CV-

464, 2009 WL 3429775 (W.D.N.Y. Oct. 19, 2009)).

Quite simply, Lopez cannot state a claim for a violation of his due process rights because

he does not have liberty interest in his discharge from RevCore.  Accordingly, this claim is

dismissed.

### iii. New York Mental Hygiene Law

Finally, Lopez alleges that the RevCore Defendants violated 14 N.Y.C.R.R. §§ 815.5 and 815.7, which prescribes regulatory guidelines for OASAS-certified/authorized providers. Even if Lopez had cited to the New York Mental Hygiene Law, rather than the state regulations, these claims would be dismissed because there is no private right of action under the Mental Hygiene Law. *See Lombardo v. Holanchock*, No. 07-CV-8674 (DLC), 2008 WL 2543573, at *10 (S.D.N.Y. June 25, 2008) (quoting *McWilliams v. Catholic Diocese of Rochester*, 536 N.Y.S.2d 285, 286 (4th Dep't 1988)) ("The Mental Hygiene Law is a regulatory statute . . . No private cause of action is authorized for violations of the Mental Hygiene Law")).

## CONCLUSION

For the reasons set forth above, Lopez's complaint is dismissed with the exception of the First Amendment retaliation claim against the RevCore Defendants. This action is re-committed to the assigned magistrate judge for all remaining pretrial proceedings, including settlement discussions as appropriate.

The Clerk of Court is respectfully directed to mail a copy of this Order to the *pro se* plaintiff at the address listed on the docket, and to note the mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      November 24, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge